317-0814, People of the State of Illinois, found by Nicholas Atwood v. Michael Spicer, abbey by Baton Rouge. Mr. Atwood. May it please the court, counsel. Good morning, Your Honor. My name is Nicholas Atwood and I represent the people of the State of Illinois in this matter. The issue before the court today is whether or not the Fifth Amendment privilege in cell phone crimination protects a defendant from being compelled to provide the passcode as per lawful use of a cell phone. Briefly, this is a case of first impression in this state based on research I've performed, and these cases are reviewed in no vote. Factually, the defendant was pulled over. The police officer, the record is not very clear on what the cause was for the pullover, but the officer has investigated the vehicle. They discovered a leather bag containing narcotics, sandwich baggies, and a digital scale. So based on that, and there was also cocaine or methamphetamine in the bag. So the defendant was arrested and he was charged with possession. Because there is other evidence, do you think you have a problem with the certificate of impairment? Are you referring to the jurisdiction question? Yes. I can briefly address that, Your Honor. I don't think you have a problem with the certificate of impairment. Rule 60481 says that the people have a right to appeal in a way which has a substantive effect of suppressing evidence. And this denial of the people's motion to compel have a substantive effect of suppressing actual evidence because the people's position is that there is evidence of the defendant's intent to distribute those narcotics inside the cell phone. And so, when we look at the purpose of Rule 60481, the case law is clear. The Kraus case, which was cited out of this district, and the Young case is the only Supreme Court case. 60481 is not intended to be a standard of review to determine whether or not the people can appeal the motion to compel a decision. The case law essentially says, where the certificate of impairment has been filed by the state attorney, we're really going to take their word for it because we're going to rely on their discretion. And that has to do with some public policy issues. In those cases, though, isn't there evidence that the state says there is, you know, X, Y, and Z that has been suppressed? Whether it's a statement, whether it's some kind of evidence. And what you're saying is that, well, we're sure that if we get the pass code, we know there's evidence. That's the people's position. I think that's, if we look at the language of 604A, it says the substantive effect. And I think the effect of suppressing evidence is we know that evidence is there and it has been affected. But the substantive effect means... How do you know there's evidence there? The officer's experience testified that he believed there'd be evidence there. And we also know from People v. Robinson, it's the only Supreme Court case, when we look at the presence of sandwich baggies, the presence of a digital scale, the presence of narcotics, all of that is the evidence of an intent to distribute narcotics. And so we do not know with 100% certainty. That's why they need to access the phone. And so this order did have the substantive effect of suppressing evidence that may or may not be found on that phone. Well, since you don't know with 100% certainty, how could we apply the foregone conclusion theory? Well, that raises the two sides to the coin, essentially. The cases cited by myself and cited by the defendant basically have two contrary interpretations to that test. The first question is, you can apply the substantive effect test and the foregone conclusion test to the pass code itself. That's from Commonwealth of Massachusetts v. Gelfgat, Commonwealth of Pennsylvania v. Davis, and Florida v. Stahl. All three of those cases apply the foregone conclusion test, which is we have knowledge that the pass code exists. We know that the defendant possesses that pass code, and the pass code itself is authenticated once it's entered into the phone. Those courts all applied that test and determined that it is a foregone conclusion because that information doesn't add to the sum total of evidence that the people allege they will find. And I think importantly with the foregone conclusion, the people aren't required to say with specificity every piece of evidence they'll find. That's the purpose of discovery, is to discover what information supports the evidence or what evidence of this crime will be there. They're only required to show with reasonable particularity. And I will adjust the court in a motion to add authority on Friday. There's a case that's recently come out of Indiana called Sow v. Indiana, and I spoke to counsel on Friday. He said he was willing to discuss this case today, if your honors would permit me to discuss that, because it came out after our briefs were filed. Counsel? Is that okay with you? Yes, Your Honor. Counsel and I spoke on Friday. All right. Go ahead. Okay, so in Sow v. Indiana, it's really, I think, an opinion that can serve as excellent guidance for this court. They actually applied the opposite test that I'm advocating for. They applied the test that the defendant advocated for. But in that case, the issue comes down to what were we actually asking for in that memory? Because they did not know in Sow what evidence specifically would be found. They knew that the warrant request was very broad. They did not ask for text messages, phone logs, map data, et cetera. They just simply asked for the defendant to provide a passcode to the phone, and then they would have car-to-launch access to the phone. And in our situation, we have a warrant in affidavit that asks for text messages, call logs, map data. All these things have to do with the officer's experience that these are used in furtherance of criminal activity. And they asked for that in the limited sense as related to the presence of narcotics. I believe they said methamphetamine or cocaine in the warrant. Under that rationale of Sow v. Indiana, I believe it's in paragraph 50 of 54, they basically said, look, the state's not pointed with any reasonable particularity to what might be found on the cell phone. They've only said generally we want access to the full phone. The people's warrant in the present case narrowly tailored their request to what they specifically wanted. Things that the officer had stated in his affidavit had to do with intent to distribute narcotics. He said in his experience he commonly found that cell phones possessed map data to show routes from distribution of origin points, communications between customers and suppliers, money transactions, text messages, you name it. All of those things would be relevant. And in this case, we narrowly tailored that warrant to ask for only those things. The Sow case, what I like about the Sow case, unlike Stahl, unlike some of the like Hubble and Fisher, the older cases, it talks about the effect that cell phone technology has had on these types of discovery requests. 20 or 30 years ago, these rules were developed based on paper documents. Where you may have tens of thousands of paper documents in a case, that is not like cell phones today. Cell phones are ubiquitous. The Sow case... Let me just say, you know, where this technology has kind of changed our thinking, required to, I guess. But with this being our analogous, so you're saying this information is in this phone. And we've got a warrant and the defendant knows how to open that phone and we want him to tell us, right? Correct. Is that substantively any different? Let's suppose you say, I know the defendant has, we know he's got all the evidence of this crime.  And we know he knows where the body is buried because we know he buried the body. So can you make the defendant tell you where the body is buried? I don't think that you can force the defendant to tell you where the body is buried. What's actually really different than saying, oh, there's this evidence in here. Somewhere, you've got to tell us where it is and help us together. I think the distinction is this. With the dead body, that's not required to prove a murder. You can use other circumstantial evidence that exists. With these phones, and unlike the prior applications that we're familiar with, the key to the lockbox and the wall safe analogy, inside those, in the safe, in the lockbox, is a physical document that we're seeking. Inside this cell phone, it all goes to the cloud. There is no physical document. There's no way to obtain that information from another source. If this were a safe, you could have a warrant and you could crack the safe. If this were a parcel. Could you make the defendant say it's a combination of safes? Well, that references the dissent. Could you make the defendant give you the combination of the safe? Well, that is the question in this case. Is that testimony? And so that's where the foregone conclusion comes in. And I think in the context, if you look at So and addressing the defendant's argument as related to the information that's being sought, you cannot propel because it's essentially causing him to testify. I say if you look at So and you look at the reasonable particularity requirement of the state's request, we're not asking him to testify to anything specific. We're asking him to provide us a passcode. And whether or not there ends up being evidence inside there, it's the same situation. If he doesn't give us the passcode for a safe, we could just obtain another method into the safe. Where the problem with cell phones and modern technology is done, there is no alternative method. All right. So doesn't that defeat your inevitable conclusion or discovery? I mean, isn't that the whole basis is that you don't have another way to get it? Well, that's exactly why it's important to be able to compel defendants in certain situations to provide that passcode because otherwise it presents essentially the court would endorse allowing defendants to utilize a cell phone in furtherance of criminal activity, knowing that there's absolutely no way the information on that phone can ever be accessed. And the civil court recognized this, and they actually suggested perhaps there be guidelines that were established in order to determine when it would be appropriate to compel a defendant to provide a passcode. One of the guidelines I think we could all agree on is that because these phones can't be accessed, you can compel a defendant to provide a passcode if someone's in serious danger and there's a risk that someone could be harmed. You can immediately compel that information to protect a potential victim. And there could be any number of circumstances in which that could occur. The fourth guideline is the one I'd like to focus on. And in that guideline, they talk about non-emergency situations, which is what this situation is. No one's going to die if we don't find the information on this phone. But in that case, the civil court said you could probably compel a defendant if after you went to third parties, such as Apple, Verizon, et cetera, and did a traditional subpoena method to try to obtain the information from the phone there first. If you could not do that, then you could file a motion to compel, depending on the facts and depending on what specifically you're asking for, and you could then compel the defendant to provide that information. And so I think in the context of this situation where the civil court gets that reasoning just a little bit wrong is the fact that folks like Apple and these third-party providers are actively trying to thwart law enforcement from obtaining this information. I cite it in the motion. Well, that's one way to put it. And another way to put it is they're trying to respect their customer's privacy. Certainly. I don't question whatever their intent is. That's really their rationale. From a public policy standpoint and from a protection of the people of the state standpoint, I think that we need to be able to access this information. And so because they don't consider that in their guidelines, so I think that kind of distinguishes those guidelines because they're assuming that these companies will cooperate, but they've actively not cooperated, and they've created cell phones. Every new cell phone model that comes out, they create additional barriers. And one of the articles I cite, or actually it's the Apple security policy, their newest iPhone, they state it would take five to six years for law enforcement entering a passcode every 80 milliseconds to obtain the eventual passcode to unlock the phone. It's a near impossibility. There's no requirement that criminals make life easier for the police, right? Certainly there's no requirement. There's no requirement that corporations or individuals that aren't involved in crime be assistant crime fighters and help the police solve crimes, right? Yeah, and I think there's no argument that we need them to assist. We just need them not to obstruct. Or if they elect to obstruct, as Apple has done, the court needs to create another mechanism for law enforcement to serve its purpose, which is to protect the public. Well, the only thing that's obstructing is another man's protection of privacy. Correct. Maybe I don't understand the facts of this case. Has there been a request of Apple? Has there been a search warrant of Apple? There hasn't been a search warrant of Apple yet. So why are we here? Isn't there another way to get it? Well, based on the information, it appears that if the people had attempted to do this, they would have gotten nowhere because, as I cited, Apple has been doing this for several years. This is prior to this arrest. And I actually spoke to the state's attorney on this. This is an injury. Well, you're really not supposed to. It's not an argument. I just spoke to the state attorney. I don't think the state can just throw up their hands and say we're done. They need to do something else before the young certificate would be. Well, I understand your honest concern. That's why the people requested the defendant provide the code. He refused. So then the people filed a motion to compel, and that's how we got here today. Well, why not do a request for a search warrant to be served on whatever cell phone provider there is? I mean, in the old days, Justice Schmidt and I did some prosecution work. You just subpoenaed the companies. Correct. And that's the case. And they haven't been done yet. The SOC case talks about that as well. Nobody's refused to provide. And, you know, this is akin to a civil discovery process. And that gets to the whole question of the Senate discussing, you know, we don't know what information is ultimately going to be found. There's some speculative aspect to that on the phone. Well, if the defendant won't give it to you, then there's just got to be another way around. There's just a good investigator will try again and again and again. Right. And I think that speaks to the guidelines of the civil court because they're realizing that the analogies of the past cases are becoming outdated and modern technology is ever-changing. And it's going to be essentially a situation where law enforcement will always be one step behind. And so create a set of guidelines for the people to use, for law enforcement to use, to be able to obtain this information, and rather than just decide it's not possible because the past code analogy is not the test that the court wants to use. Gosh, we've had cases on appeal here where PIN codes, you know, were obtained by very devoted law enforcement investigators. You know, they just didn't stop when the defendant said no. So I think the defendant's point is well taken. I'm not so sure that this is really a true young certificate situation. Well, I understand your honors point of view, and I do believe that based on the evidence that was presented that the order did substantively deny evidence to the people and they did properly file their certificate of impairment on that. But I will just say briefly, you know, if this court does decide that this motion to compel was properly denied, I do ask the court to consider establishing a set of guidelines that would give state's attorneys and law enforcement an opportunity to determine what are the best practices to go forth in obtaining this information so that people's rights are respected. And with that, if there are no further questions, I would ask the court to reverse the trial court's order and compel the defendant to provide the past code. Thank you. Thank you. Mr. Weaver. Thank you, Your Honor. Good morning, Your Honor. Counsel. My name is Ed Weaver. I'm the Office of the State Adult Defender, and I represent the defendants in this case. May it please the court. There certainly are a lot of things to talk about today, given counsel's arguments. First and foremost, though, as Your Honors have all mentioned today, this court should dismiss the state's appeal for lack of jurisdiction, because it suppresses or reduces pressing evidence. Counsel's correct in Rule 604A. It does allow the state to appeal certain orders, the effect of which suppress evidence, but what evidence was suppressed in this case? Have you got a case that says that that's jurisdictional? I mean, that they say precisely what it is that has been suppressed? I mean, it's not really jurisdictional. I'm sorry. Well, if you want us to dismiss it from one of the jurisdictions, and they're saying, look, you've got this phone, and we know that drug dealers use their phones to make calls to contact, you know, people, and now phones track their every move, and yada, yada, yada. I'm sorry to give the Congress affidavit. Is the lack of specificity in the Certificate of Impairment jurisdictional, is what I'm asking? I mean, supposing we agree, do we affirm the trial court, or do we dismiss the law of jurisdiction? I understand that question. Because the Supreme Court is always honest about whether we've got jurisdiction or not. Absolutely, Your Honor. I think the answer to that question would be, one, dismiss for lack of jurisdiction because no evidence was suppressed, or if you feel that there is jurisdiction in this case, by somehow evidence, as counsel suggests, purported evidence was suppressed, then affirm based on the Oval Court's order saying that the defendant has access to that. Let's suppose, let's take this on a cell phone thing, and let's just suppose that the defendant had this impenetrable force, and he just couldn't get into it. It had to have dropped in some kind of blockbuster, I don't know, B-52, which would then destroy all the evidence. But they've got a search warrant for that impenetrable force, but it's protected with locks, with pass codes, and while they have a search warrant to get into that fortress, the defendant won't let him in, and there's no other way to get into it. Would it compel the defendant to open the door? No, Your Honor. That is a very good example, same as if there was this impenetrable safe that Your Honor was talking about before. The Fifth Amendment and the Fourth Amendment can coexist. Law enforcement can certainly, in our hypothetical, have a hypothetical search warrant that checks off all the boxes that would withstand a motion to quash, which in this case, I'm not even sure at this point that the search warrant in this case would withstand a motion to quash. But let's say there is a safe with a combination code. Even though the law enforcement is holding that search warrant, they're still not going to be able to compel the defendant to testify against himself to give testimony about, this is the combination that I have to the safe. That's where, in this situation, the Fourth Amendment and the Fifth Amendment are going to bump up against each other. As I believe was talked about earlier, in this case, giving the password to the state or unlocking the phone on its own is going to be the same thing as giving testimony that's protected by the Fifth Amendment. This is just really an issue of, can you force somebody to consent to the search? That's what it is. Give us your pass code. Say yes. And the trial court said, no, I'm not going to force him to consent. That's absolutely right, Your Honor. But it's not a search. There isn't a search warrant. There isn't a consent to search. You have to have a search to have evidence suppressed. There's just no search. That's exactly right, Your Honor. That's why this case is so, the procedure of history, the procedure of password in this case, is so strange. What about your opposing counsel's statement that, well, the case law says we just take it at their word that the young certificate is correct. Did you find any support for that statement? Unfortunately not, Your Honor. I admit that that does sound, I was unsatisfied with the cases that do say that. They say that based on the amount of time and effort that would go into the state's appeal, the court is just going to hand off good faith opinion and say we're not going to look at the actual impairment. It seems to be even more loosely construed than that anymore, specifically with the certificate of impairment. I think some cases, and I apologize, I don't have any specific citations where the state appeals have even gone on without the certificate of impairment. The court has said before that it's not procedural. It seems to me that, although I think they should be stronger, the court doesn't necessarily even look at the certificate of impairment. In this case, it seems very difficult for the state to say that their case is impaired, given, as counsel described, the evidence that was already collected with the defendant, and not knowing what's on the phone. How can you say that you're impaired if you don't know what's on the phone? If you don't know what's on the phone, it could be nothing. It could be an empty fortress that once you get in, somehow there's nothing there. And so, but it also goes down, the state has a search warrant for the phone, right? And, but they're saying we can't execute the search warrant without some information from the defendant. Well, that's not entirely true, Your Honor. Okay, well, straighten me out. I will say that it is difficult. As I believe Your Honor pointed out, Apple has no incentive to let people into their phones to have a, you know, Apple wants to make the most secure devices. Law enforcement wants to have devices to break into those devices. They have no, you know, their interests are not aligned there. In this case, or with phones, specifically iPhones, Apple has said we're going to make the most secure product ever. That doesn't mean that they're unbreakable, and they have been broken into in the past, and companies make devices and technology that can break into iPhones. They exist. However, as we were just talking about, that's obviously against what Apple wants. So it's like building a better mousetrap. Now, there's also, there are also third-party, as Your Honor pointed out, you can get this information. Well, the search warrant allows them to seize the phone. They've got the phone. They can take it anywhere they want to take it. And if Apple doesn't cooperate, well, then maybe they need another court order. But that hasn't happened here. They've got the phone. They've got to figure out how to get into it. That's exactly how it seems in this case, Your Honor. It seems like law enforcement, in a sense, threw up their hands and said, well, let's force them to do our job for us. And, you know, there was at least a small contention in the briefs and at trial about whether or not this phone even belongs to the defendant. Now, that's something that seems that law enforcement could easily figure out by subpoenaing Apple. Well, I don't want it to discourage law enforcement. No, that's fine. I have a question related to that. If they know the attempt is futile and that it's going to be rejected, are they still required to do so? Because I think, you know, there have been some, you know, well-publicized cases where law enforcement sought the help of them and they said no. So if they are not going to release it, do you think the state still is required to do that first, if they know that the answer is going to be no from Apple? Do you mean file a search warrant and go through all that procedural process? Yes, Your Honor. Do you really think the law requires somebody to know that they did a dry well? Well, in this case, Your Honor, it would be procedural, where they would have to file a search warrant in order to have what should have been done in this case, a contempt hearing to then force the defendant to open the phone. Now, based on that, because that way you would have the search warrant in your hand and say you need to unlock this phone based on this. Well, they've got a search warrant for the phone. They issued the search warrant. So they've got a search warrant. Who did they issue the search warrant to? They issued the search warrant to the defendant in this case. Okay, but they've already done that. But you're saying with respect to Apple, what did they serve on Apple to get Apple's assistance? I do not know the actual subpoena process that they would have to serve on Apple. But as I was saying, procedurally, they need to have the search warrant in order to force the defendant or anyone to do it. They can't just throw up their hands and say, this isn't going to work, let's compel the defendant to do it. And that's exactly what happened in this case, what should have happened. And I want to clarify, I'm not disparaging law enforcement. I think this was a prosecutorial decision. I'm guessing that – I'm familiar with law enforcement in Rock Island County. I'm guessing they're being directed. So this is the prosecutor's decision how to proceed. Absolutely, Your Honor. And I don't want to give that impression that I have a strange bond. I know you're not. In this case, what happened was we found this phone. We want to get into this phone. We want to get into this phone. The defendant let us into this phone. At that point, when they had a valid search warrant, they could have then used the search warrant, run into court and said, defendant, you need to comply with the search warrant. If the defendant didn't comply with the search warrant, they could have then filed a rule of show cause and held – potentially held the defendant in contempt until he gave the pass code or was protected by the Fifth Amendment. So then you're arguing that they can't compel the defendant? There is a method they compel the defendant? No, Your Honor. Hold on. Let me finish. I'm sorry. I'm old. I'm talking. Now you're arguing that there is a method for the state to compel the defendant to give that pass code so they can execute their search warrant on the phone? No, Your Honor. I mean, specifically procedurally, what they should have done was once they had a search warrant and knew they couldn't get into the phone because the defendant wouldn't give them the pass code, the next step from there is to have a contempt proceeding to say the defendant needs to comply with the search warrant or we don't want contempt. At that point, the defendant could then raise the same argument that they did here, saying the Fifth Amendment. But the key to that is when it was denied – when the order denied the state's position in this case, the state could then appeal it. That's why all the cases that we've cited, I don't say all, nearly all, are contempt proceedings. In those cases, it didn't matter that they didn't know what the evidence was and nothing was suppressed because they were appealing the contempt proceedings themselves. So it kind of goes back to where we started about language jurisdiction because we have no idea what the evidence is. I'll go to the next. Thank you. If I may briefly address the second part of our argument, where it's helpful to describe it as choosing between two paths for the foregone conclusion exception itself. The passcode-focused exception does not. As we've kind of talked about here today, forcing someone – forcing the defendant to turn over their pass – to tell you the passcode or unlock the phone is solidly testament, which is protected by the Fifth Amendment. Now, in cases that the state cites, ignore this difference between testimony as it's commonly known and that act of production that could be testimonial. The foregone conclusion exception has always been about providing those documents and other tangible things that the state could show with reasonable particularity were already in existence, under control, and authentic. Which is to say that we already know that all of this information exists, so you're handing them over to us. That act of production is not testimonial. But you can see where a passcode or a combination isn't a document or any tangible type thing. The defendant can only use their mind to give the state the passcode to unlock it. It's that state's attempt to force the defendant to disclose the contents that indicates the sublimination clause. Realistically, the state doesn't care about the passcode. The state wants all the information that they think is in the phone. And in that case, it's unlike tax documents that you used to be able to ask for. Well, the state might care about it if the passcode, the defendant says, that's not my phone. So they find all this stuff on there, that's not my phone. Never seen it before. Well, really? Then how did you know the passcode? So, given the passcode, it could be construed as an admission that he either owned the phone or he at least had access to use it. Well, that's not a true argument, but that's really a distortion of how the foreground-conclusion exception has been applied historically. Although I do agree with the state that it is not a very well-settled area. But in this case, where would it stop? If it was focused on the passcode, where would it stop? Does the defendant have to tell the state all their passwords, all their email passwords, their iTunes, their Apple account passwords? Do they have to go home and give the state all the passwords that they have in their computer at home just because they're password-protected? It doesn't really make sense to say that we know you have a password. It's a foreground-conclusion that you have a password, so give us the password. That's just not the way that the foreground-conclusion has been applied. The appropriate reading of the exception is what the government knows. In this case, what's the digital information that you want and the things you're actually seeking? It must know and it must not really infer what's on the phone. We've heard a lot about what the detective thought was on the phone and based on his experience, what he thought was on the phone. That doesn't make any sense on the phone. So if you're here for the argument, can we ask that this court either dismiss this case or affirm the court's ruling? Thank you. Thank you, counsel. Mr. Atwood, it's a rebuttal. Thank you. So, my question isn't if your argument was for, gee, that's not testimonial, given the passcode, but isn't it kind of an admission that either, A, that's my phone, or B, I have access to it because I know the passcode? Well, that's all part of the test. We have to establish the state's burden show that the passcode exists and that the defendant knows that information. But my point is, isn't that asking the defendant to testify against himself? I think it's only asking the defendant to testify if the passcode itself is somehow incriminating. But it's not. It's simply – Well, doesn't it – It's not incriminating. It's not incriminating in the sense that it tells you that's my phone. Because one thing, when you open this phone up, you can say, well, congratulations. That's a lot of interesting stuff. But I don't know anything about it. I've never, you know, I've never used that phone, never had access to it, don't know whose phone it is. You say, well, really? How do you know the passcode? And that's well taken. I think in that context, that's really going to establish that that's that person's phone or at least they know the person who owned it and that person gave them the passcode. But it's not quite the situation as before today. And that jumps onto what counsel said. He said there was some indication this isn't the defendant's phone. The only indication in the record is that the arresting officer was asked if he included in his report that the phone belonged to the defendant. He said he didn't. But he testified that the defendant told him it was his phone and the phone was on the defendant's person. I think that's clearly enough to establish that that phone belongs to the defendant. And importantly, in the motion of confederation, he never said it's not my phone and I don't know the passcode. So clearly, I think, given that, it's logical and reasonable to infer that that phone belonged to the defendant. I'd also like to briefly address the defendant's hypothetical. Where does it stop? The Apple iPhones, the iTunes passcode, things like that. Well, relevancy and rules of evidence will prevent the state from overreaching. And that's what the civil court talks about. They said, you know, if you go in and ask for text messages related to the offense, maps related to the offense, that's a severe limitation of the information you're asking for. You're not asking for everyone's personal information and their entire list of photos and their Facebook account, et cetera, because that's not relevant unless it is relevant. You know, if it was a cyber-stalking case, you might be able to compel the Facebook passcode because it would show evidence of that person harassing another person, hypothetically. One thing I wanted to address, Justice Wright, to refer to the certificate of impairment issue. And on page 4, the reply, I mean, if I did cite it, people would be cross. And I quote a citation that says the court relies, quote, solely upon the good faith evaluation by the prosecutor of the impact of the suppression order in the case. And that piggybacks off the People Be Young decision, which talks about, you know, the reason we do this and the reason we rely on the state is because there's not very many state appeals in the first place. So we don't feel that the state's turn is going to abuse this privilege. We take their word for it if they think the evidence has been suppressed, they're filing their certificate of impairment. Another issue I'd like to talk about that we didn't quite bring up. But I think that it just belabors the point. What specific evidence do you have a, you know, March 9th text or it's going to document a transaction or, you know, I just, I. Well, that's, Your Honor's question can be addressed by some of the older cases like Hubble and Fisher. They talk about the rule. You do not have to know specifically what you're going to find in those documents. You just have to allege of reasonable particularity what you expect to find. Because we know in discovery, when you're going through hundreds of pages of documents, you find little nuggets you never thought were there in the first place. That may ultimately lead to amended charges because you discovered evidence of another crime that's been committed. Or you discovered evidence of malpractice or something like that. You know, you set forth your pleading and you start looking for evidence. And this is part of that. We had evidence showing we believe this man is intended to distribute narcotics. He's got a bag of 20 sandwich baggies, cocaine in digital scales. A squared plus B squared equals C squared. I mean, that's what we have here. Exactly. And so what's going to be hard about convicting this fellow? Well, the only thing is there could be additional evidence to support more charges or, you know, there's no guarantee of conviction. And the people have a right to substantially try the case. And this evidence assists in that. We also have these principles about even in the most egregious cases. I think in the law school, one of the Christian burial cases, I personally disagreed with the Supreme Court on that. But, you know, but nonetheless, they always win those disagreements. And we have these principles about people not being required to give evidence against themselves. And sometimes this language that you use of first impression, issue of first impression, I think it's our attention more. It's like a dangling carrot for our viewing court. I know. I heard you set myself up for this. I love that stuff. But sometimes it's an issue of first impression because it was an improper approach in the first place that nobody else has ever tried. That's one interpretation. So, you know. I think the development of the pass code technology is what made it a case of first impression. This has only been occurring over the last seven or eight years. Before I conclude, I do want to briefly address, you know, counsel had made a reference about, you know, law enforcement can have other methods. And I think that, again, I just want to refer to the analogy, you know, you can crack a safe with a drill. You can't crack an iPhone with a drill. You destroy it. The information is not tangible. It's in the cloud. And Your Honor referred to the fact that, you know, why did the state's attorneys try to go to third party? Why didn't they try to get the feds involved to try to crack this? That costs a lot of money. And we have to remember the burden on the people. You know, the state has limited resources. And part of this has to do with, you know, we can't always go chasing these things. We don't bend the Constitution based on cost. Certainly not. But, I mean, you know, it's not a determinative factor. But, you know, there are. I'm not. I'm trying to defend the state's attorneys. And that's your job. I understand. The other thing I would like to briefly point out before I lose my train of thought. No, everyone. Yeah. I wasn't. Thank you. All right. Yeah. Well, just remember, it was easy. Everybody would do it. Thank you both here for your arguments today. This is an interesting case. And that will be taken under advisement. We'll issue a written testimony.